IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* Samuel Babalola and Kayode Samuel Adetunmbi, | § | |
| STATE OF TEXAS, *ex rel.* Samuel Babalola and Kayode Samuel Adetunmbi, | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-11-4026 |
| ARUN SHARMA, d/b/a Allergy Asthma Arthritis and Pain Center, KIRAN SHARMA, d/b/a Allergy Asthma Arthritis and Pain Center, and KIRAN SHARMA, M.D., P.A., d/b/a Allergy Asthma Arthritis and Pain Center, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Relator-Plaintiffs Samuel Babalola and Kayode Samuel Adtenmbi (collectively, "Relators") bring this *qui tam* action against Defendants Arun Sharma, d/b/a Allergy Asthma Arthritis and Pain Center, Kiran Sharma, d/b/a Allergy Asthma Arthritis and Pain Center, and Kiran Sharma, M.D., P.A., d/b/a Allergy Asthma Arthritis and Pain Center (collectively, the "Sharmas"), under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* On the basis of the same fraudulent conduct alleged in this action the United

States prosecuted Defendants Arun Sharma and Kiran Sharma, both of whom were convicted and ordered to pay an amount of criminal restitution. At issue is whether Relators are entitled to share in that criminal recovery. Pending before the court is the United States' Motion for Summary Judgment (Docket Entry No. 34). For the reasons explained below the court will grant the United States' motion.

## I. Background

### A. Facts

#### 1. Alleged Fraud

Defendants Arun Sharma and Kiran Sharma, physicians who are husband and wife, operated a medical practice in Houston, Texas, where Relators Babalola and Adetunmbi were employed as medical assistants.[1] Relators allege that the Sharmas fraudulently billed Medicare and Medicaid for patient visits and medical services that never actually occurred.[2] Relators further allege that the Sharmas defrauded the United States by performing and billing Medicare and Medicaid for medically unnecessary tests.[3]

---

[1]Relators Samuel Babalola and Kayode Samuel Adetenmbi's Original Complaint ("Original Complaint"), Docket Entry No 1, ¶¶ 2, 3, 8. Relators allege that Babalola worked for the Sharmas from May 2001 through October 2007. Id. ¶ 2. Relators allege that Adetunmbi was employed from August 1998 until June 2009. Id. ¶ 3.

[2]Id. ¶ 20. Relators also allege that the Sharmas defrauded private insurance companies in this manner. Id. ¶ 23.

[3]Id. ¶ 22.

2. Relators' Anonymous Letter and Cooperation with Law Enforcement

Relators first suspected the fraud in 2005 and thereafter commenced their own investigation into the Sharmas' billing practices.[4] On October 12, 2007, Relators sent the Texas Medical Board, Medicare, Medicaid, and various private insurance companies an anonymous letter titled "Citadel of Fraudulence" in which Relators detailed their findings concerning the Sharmas' fraud.[5] Federal agents contacted both Relators in late July or early August of 2009, inquiring into the Relators' knowledge of the Sharmas' fraud and prompting Relators to reveal that they had written the "Citadel of Fraudulence" letter.[6] Relators subsequently met with a federal prosecutor multiple times to discuss certain details of the Sharmas' fraud and rehearse the testimony each had agreed to give in the Sharmas' upcoming trial.[7]

[4]Unsworn Declaration Under Penalty of Perjury of Kayode Samuel Adetunmbi ("Adetunmbi Declaration"), Ex. 1 to Relators' Response to the United States' Motion for Summary Judgment ("Relators' Response"), Docket Entry No. 36-1, ¶ 4; Unsworn Declaration Under Penalty of Perjury of Samuel A. Babalola ("Babalola Declaration"), Ex. 2 to Relators' Response, Docket Entry No. 36-2, ¶ 4.

[5]Adetunmbi Declaration, Docket Entry No. 36-1, ¶ 5; Babalola Declaration, Docket Entry No. 36-2, ¶ 5; "Citadel of Fraudulence" Letter, Ex. A to Original Complaint, Docket Entry No. 1-1.

[6]Adetunmbi Declaration, Docket Entry No. 36-1, ¶¶ 7-9; Babalola Declaration, Docket Entry No. 36-2, ¶¶ 6-8.

[7]Adetunmbi Declaration, Docket Entry No. 36-1, ¶ 12; Babalola Declaration, Docket Entry No. 36-2, ¶¶ 9-10.

3. Criminal Action Against Arun Sharma and Kiran Sharma

The United States obtained an indictment against Arun Sharma and Kiran Sharma on July 16, 2009.[8] On April 26, 2010, Arun Sharma and Kiran Sharma each pleaded guilty to one count of conspiracy to commit health care fraud and mail fraud in violation of 18 U.S.C. § 371 and one substantive count of health care fraud in violation of U.S.C. § 1347.[9] At sentencing on February 1, 2011, the district court ordered restitution in the amount of $43,318,170.93.[10] The Fifth Circuit vacated that order on December 20, 2012, and remanded for a recalculation of the proper amount of restitution.[11]

## B. Procedural History

Relators filed this action on November 17, 2001, bringing three claims under the FCA, 31 U.S.C. § 3729,[12] and one claim under

---

[8]United States' Reply to Relators' Response to Motion for Summary Judgment ("United States' Reply"), Docket Entry No. 37, at 3.

[9]United States' Motion for Summary Judgment, Docket Entry No. 34, at 2.

[10]Id.

[11]Relators' Notice of Current Status of Related Case, Docket Entry No. 41 (attaching United States v. Sharma, 2012 WL 6621766 (5th Cir. Dec. 20, 2012)).

[12]The FCA was amended on May 20, 2009. See Pub. L. 111-21, § 4(a), 123 Stat. 1621 (2009). Relators allege that the Sharmas violated the FCA both before and after May 20, 2009. Original Complaint, Docket Entry No. 1, ¶¶ 27-28. The FCA amendments do not have any impact on the court's decision in this opinion.

the Texas False Claims Act, TEX. HUM. RES. CODE § 36.002.[13] On March 21, 2012, the United States declined to intervene in the suit pursuant to 31 U.S.C. § 3730(b)(4)(B).[14]

The United States filed the pending Motion for Summary Judgment on June 30, 2012, seeking a judgment that Relators are not entitled to a share of the criminal recovery as a matter of law.[15] The United States argues that any potential recovery available to Relators under the FCA is limited to a share of any proceeds recovered in this *qui tam* action.[16] On July 23, 2012, Relators responded, arguing that Relators are entitled to a share of the criminal recovery because the criminal proceeding constitutes an "alternate remedy" under 31 U.S.C. § 3730(c)(5).[17] The United States filed a Reply on August 13, 2012,[18] and Relators filed a Surreply on January 3, 2013.[19]

---

[13]Original Complaint, Docket Entry No. 1, ¶¶ 47-56.

[14]The Government's Notice of Election to Decline Intervention, Docket Entry No. 14.

[15]United States' Motion for Summary Judgment, Docket Entry No. 34, at p. 10.

[16]Id.

[17]Relators' Response, Docket Entry No. 36, at p. 5.

[18]United States' Reply, Docket Entry No. 37.

[19]Relators' Surreply to the United States' Motion for Summary Judgment ("Relators' Surreply"), Docket Entry No. 40.

## II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure mandates summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'[S]ummary judgment is appropriate where the only issue before the court is a pure question of law.'" Kornman & Associates, Inc. v. United States, 527 F.3d 443, 450 (5th Cir. 2008) (citing Sheline v. Dun & Bradstreet Corp., 948 F.2d 174, 176 (5th Cir. 1991)). In this case the United States requests partial summary judgment on the sole issue of whether Relators are entitled to share in the criminal restitution as a matter of law. The material facts relevant to this issue are not in dispute.

## III. Analysis

### A. False Claims Act

The FCA imposes civil liability upon "any person" who, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to officers or employees of the United States. 31 U.S.C. § 3729(a)(1)(A); see also Vt. Agency of Natural Res. v. United States *ex rel.* Stevens, 120 S. Ct. 1858, 1860 (2000). Any person who violates the FCA is liable to the United States for a civil penalty of not less than $5,500 and not more than $11,000 per claim, plus three times the amount of damages sustained by the United States and costs of the suit.

31 U.S.C. § 3729(a)(1), (3); Adjustments to Penalties, 28 C.F.R. § 85.3(a)(9) (2013).

The FCA not only authorizes the United States itself to bring suit, § 3730(a), but also permits a private person, known as a relator, to bring a *qui tam* action against an alleged false claimant "for the person and for the United States Government." § 3730(b)(1); see also United States ex rel. Branch Consultants v. Allstate Ins. Co., 560 F.3d 371, 376 (5th Cir. 2009) ("[T]he FCA permits suits by private parties on behalf of the United States against anyone submitting a false claim to the government." (internal brackets and quotation marks omitted)). The relator must give the United States the option "to intervene and proceed with the action . . . after it receives both the complaint and the material evidence and information." § 3730(b)(2). If the United States elects to intervene, and recovers a judgment, the relator is entitled to between 15% and 25% of the recovery. § 3730(d)(1). If the United States declines the relator may proceed on her own and, if successful, take a larger share of the recovery, between 25% and 30%. § 3730(d)(2).

The United States may, however, choose to pursue the fraud claim through an "alternate remedy" instead of through the FCA:

> Notwithstanding subsection (b) [i.e., the *qui tam* provisions], the [United States] Government may elect to pursue its claim through any alternate remedy available to the Government, including an administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

§ 3730(c)(5).

**B. Motion for Summary Judgment**

The Motion for Summary Judgment turns on the construction of § 3730(c)(5), the "alternate remedy" provision. Two pertinent issues arise in this case: (1) whether a relator must have filed a *qui tam* action prior to the United States' election to pursue a non-FCA remedy in order to take advantage of the "alternate remedy" provision and (2) whether a criminal action is an "alternate remedy."

The United States argues that it did not "elect to pursue its claim through any alternate remedy" because Relators did not have a valid *qui tam* action when the United States chose to pursue the criminal prosecution of Arun Sharma and Kiran Sharma (i.e., 2009) or even when the United States obtained the judgment (i.e., February 2011).[20] The United States urges the court to decline to address whether a criminal action is an "alternate remedy" because the United States did not elect to pursue the criminal action -- "alternate remedy" or not -- in lieu of intervening in a pending *qui tam* action.[21]

Relators contend that under § 3730(c)(5) a relator is required to file her *qui tam* action only before the judgment in the United

[20]United States' Motion for Summary Judgment, Docket Entry No. 34, at p. 10; United States' Reply, Docket Entry No. 37, at p. 3.

[21]United States' Reply, Docket Entry No. 37, at p. 2.

States' non-FCA action is final.[22] Because the judgment is not final in Arun Sharma and Kiran Sharma's criminal case in light of the Fifth Circuit's order vacating the judgment and remanding to the district court, Relators argue that they are entitled to take advantage of the "alternate remedy" provision.[23] Relators also maintain that a criminal action is an "alternate remedy" under § 3730(c)(5).[24] After considering the text of the statute and the relevant case law the court concludes that the United States has the better of the argument.

If the plain language of a statute is unambiguous and does not lead to an absurd result the court's inquiry "begins and ends with the plain meaning of that language." United States v. Clayton, 613 F.3d 592, 596 (5th Cir. 2010). To determine the plainness or ambiguity of statutory language courts consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 117 S. Ct. 843, 846 (1997).

The court concludes that § 3730(c)(5) does not allow a relator to take advantage of the "alternate remedy" provision if the relator did not have a valid *qui tam* action pending when the United States made the decision to pursue a non-FCA course of action.

---

[22]Relators' Response, Docket Entry No. 36, at pp. 8, 14.

[23]Id. at 14.

[24]Id. at 8; Relators' Surreply, Docket Entry No. 40, at p. 2.

Section 3730(c)(5) provides: "Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy . . . ." This language establishes a required sequence of actions. First, the relator must file her *qui tam* complaint. Then, the United States must choose an alternative course of action to intervening in the suit.

The court reads the opening subordinate clause in § 3730(c)(5) to mean "notwithstanding the filing of a *qui tam* action" because subsection (b) is devoted entirely to the procedures associated with filing a *qui tam* action. See § 3730(b). Therefore the filing of a valid *qui tam* action is a prerequisite to the operation of the "alternate remedy" provision. Moreover, the phrase "the Government may elect to pursue" reveals that the "alternate remedy" provision is triggered only when the United States makes the choice to pursue a non-FCA remedy. The provision thus applies only when the United States makes the choice to pursue a non-FCA remedy instead of intervening in the FCA action. In this case, Relators did not file their qui tam complaint until November 17, 2011, long after the United States "elected" to pursue the criminal action.[25] A criminal action cannot be an alternative to an action that does not exist.

[25]The court need not decide the precise moment at which the United States "elected" to pursue the criminal action. Since the indictment was obtained on July 16, 2009, the court is satisfied that the United States "elected" to pursue the criminal action well before the *qui tam* complaint was filed.

The statute further provides: "the person initiating the action shall have the same rights in such proceeding [i.e., the "alternate remedy"] as such person would have had if the action had continued under this section." § 3730(c)(5). When the United States elects to pursue an "alternate remedy" the relator thus retains her rights to recovery just as if she were a *qui tam* plaintiff. Here, however, there were no relator rights to be retained because there was no relator when the United States elected to pursue the criminal action. Regardless of whether a criminal action is an "alternate remedy" § 3730(c)(5) does not apply in this case.[26]

The Fifth Circuit has not addressed this precise issue, but the court's interpretation of § 3730(c)(5) is consistent with decisions from several courts of appeals. See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 647 (6th Cir. 2003) (holding that "'alternate remedy' refers to the government's pursuit of any alternative to intervening in a relator's *qui tam* action"); United States ex rel. Barajas v. United States, 258 F.3d 1004, 1010 (9th Cir. 2001) ("If the government chooses not to intervene in the relator's action, but, instead, chooses to pursue 'any alternate remedy,' the relator has

---

[26]Because the court concludes that § 3730(c)(5) applies only when the United States decides to pursue a non-FCA remedy after a *qui tam* complaint has been filed, the court expressly declines to decide whether a criminal action is an "alternate remedy."

a right to recover a share of the proceeds of the 'alternate remedy' to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action."); United States ex rel. LaCorte v. Wagner, 185 F.3d 188, 191 (4th Cir. 1999) ("Section 3730(c)(5) simply preserves the rights of the original qui tam plaintiffs when the government resorts to an alternate remedy in place of the original action."). Relators have not cited any case in which a court has held that a relator is entitled to share in a recovery from a non-FCA action the United States elected to pursue before the relator filed her *qui tam* complaint.[27]

Relators are correct that the judgment in the criminal action is not yet final. The operation of § 3730(c)(5), however, does not depend on whether a judgment is final but on the sequence of the filing of the *qui tam* complaint and the United States' election to pursue a non-FCA remedy. The fact that the United States continues to pursue the criminal action is of no consequence under

[27]Relators note that if Relators had filed their *qui tam* action before Arun Sharma and Kiran Sharma were indicted, the *qui tam* action likely would have been stayed to allow the criminal action to proceed first. Relators' Response, Docket Entry No. 36, at p. 15. Relators warn that if § 3730(c)(5) does not apply here, relators would be "always at the mercy of prosecutors pursuing a parallel criminal case." Id. at 16. On the contrary, if Relators had filed their complaint before the United States chose to pursue the criminal action, Relators could argue that they were entitled to share in the recovery even if the *qui tam* action had been stayed. See United States v. Bisig, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005) (holding that a criminal action may be an "alternate remedy" where the *qui tam* complaint was filed prior to the United States' election to pursue the criminal action).

§ 3730(c)(5). Furthermore, Relators' assertion that "[t]he reality is that Relators, by virtue of their anonymous letter, were the catalyst for the government's entire case against [the Sharmas]" is unavailing.[28] "'Absent a valid complaint which affords a relator the possibility of recovering damages, there is no compelling reason for allowing a relator to recover for information provided to the government.'" United States ex rel. Adrian v. Regents of the Univ. of Cal., 337 Fed. App'x 379, 381 (5th Cir. 2009) (quoting United States ex rel. Bledsoe v. Cmty. Health Sys., 501 F.3d 493, 522 (6th Cir. 2007)).

Finally, Relators argue that they are entitled to share in the criminal recovery pursuant to § 3730(d). But § 3730(d) simply defines the amount and method of recovery for a relator in an FCA action (or, pursuant to § 3730(c)(5), in an action pursuing an "alternate remedy"). See § 3730(d). That section does not afford an independent basis for recovery.

## IV. Conclusion and Order

The United States has met its burden to show that there are no genuine issues of material fact and that the United States is entitled to judgment as a matter of law. The plain language of 31 U.S.C. § 3730(c)(5) does not permit Relators to share in any criminal recovery obtained by the United States. The court therefore concludes that the United States is entitled to a partial

[28]Relators' Response, Docket Entry No. 36, at p. 11.

summary judgment that Relators are not entitled to share in that criminal recovery. The United States' Motion for Summary Judgment (Docket Entry No. 34) is therefore **GRANTED**.

The court will conduct a scheduling conference on March 8, 2013, at 3:00 p.m. in Courtroom 9-B.

**SIGNED** at Houston, Texas, on this 1st day of February, 2013.

SIM LAKE
UNITED STATES DISTRICT JUDGE